IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Bradley H., | ) |
|     *Plaintiff*, | ) ) ) |
| v. | ) Case No. 3:22-cv-50138 ) ) Magistrate Judge Lisa A. Jensen |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | ) ) ) |
|     *Defendant*. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bradley H. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying his application for supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is reversed, and the case is remanded.

**I. Background**

Plaintiff filed an application for supplemental security income on February 27, 2019, alleging a disability beginning on that date because of problems with his knees, back, and ankles. R. 17, 71–72. At the time of his application, Plaintiff was 60 years old. R. 71.

A remote hearing on Plaintiff's application was held before an administrative law judge (ALJ) on July 13, 2021. R. 17. The ALJ heard testimony from Plaintiff and an impartial vocational expert (VE). R. 17. The ALJ issued a written decision on August 23, 2021, finding that Plaintiff was not disabled under the Social Security Act and thus not entitled to benefits. R. 26–27.

At step one of the inquiry, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. R. 19. At step two, the ALJ found that Plaintiff had

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 8.

1

the severe impairments of lumbar spondylosis, arthritis of the bilateral hands, and osteoarthritis of the cervical spine and bilateral hips. R. 20. At step three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal a listed impairment. R. 22. The ALJ then found that Plaintiff had the residual functional capacity (RFC)

> to perform medium work as defined in 20 CFR 416.967(c) except can frequently climb ramps and stairs; can occasionally climb ladders, ropes, or scaffolds; can frequently stoop, kneel, crawl, and crouch; must avoid exposure to unprotected heights and hazardous machinery; and can perform frequent handling and fingering bilaterally.

R. 22. Applying this RFC at step four, the ALJ found that Plaintiff could return to his past relevant work as a janitor as that job was actually performed. R. 25. The ALJ alternatively found at step five that a significant number of jobs existed in the national economy that Plaintiff could perform, such as counter supply worker and housekeeping laundry aide. R. 25–26.

After the Appeals Council denied Plaintiff's request for review on March 1, 2022, R. 1, Plaintiff filed the instant action. Dkt. 1.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [her] conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable

evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### III. Discussion

Plaintiff's main argument for remand is that the ALJ played doctor by interpreting records concerning Plaintiff's fractures to two fingers on his left hand without obtaining any medical input on the effect those fractures had on Plaintiff's ability to handle and finger. This error is critical, Plaintiff argues, because the VE testified that a reduction from frequent handling and fingering to occasional handling and fingering, even in just one hand, would result in no jobs.[2] The Court agrees that remand is warranted for the ALJ to obtain an updated medical expert's opinion on the effect that the left finger fractures have on Plaintiff's ability to handle and finger with his left hand.[3]

**A. Medical Evidence Regarding Plaintiff's Hands**

At the initial level of the application process, Plaintiff underwent a consultative examination with K.P. Ramchandani, M.D., on April 12, 2019. R. 316. Dr. Ramchandani noted that "[Plaintiff] is left-handed. His grip is 5/5 bilaterally. He is able to make a fist, pick up objects, open and close the door, oppose the thumb to fingers, and flip pages." R. 317. On April 26, 2019, Marion Panepinto, M.D., a state agency medical consultant, reviewed Plaintiff's records and found that Plaintiff could perform medium work with no limitations on handling or fingering. R. 76–78.

---

[2] According to the Social Security Administration, "'[f]requent' means occurring from one-third to two-thirds of the time" and "'[o]ccasional[]' means occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5–6 (S.S.A. 1983).

[3] Because the Court is remanding on this issue, the other issues raised by Plaintiff will not be addressed.

3

On September 19, 2019, Plaintiff sought treatment from Kelsey Jebb, PA-C, for swelling and pain on the back of his hands. R. 413. An examination noted swelling on the dorsal surface of his right hand and moderate swelling to the left first metacarpophalangeal (MCP) joint on his left hand. R. 413. Plaintiff was prescribed naproxen. R. 413.

At the reconsideration level, Plaintiff underwent a second consultative examination with Dr. Ramchandani on July 31, 2020. R. 371. Plaintiff reported joint pain in his hands when gripping or grasping. R. 371. Dr. Ramchandani noted that "[Plaintiff's] grip is 5/5 bilaterally. He is able to make a fist, pick up objects like paper clip and coin, open and close the door, oppose the thumb to fingers, and flip pages." R. 372. Dr. Ramchandani also noted "mild soft tissue swelling of small joints of hands and ankle joints, no erythema," and opined that Plaintiff had "Polyarthralgia, most likely due to osteoarthritis." R. 372–73. On October 1, 2020, Bharati Jhaveri, M.D., another state agency medical consultant, reviewed Plaintiff's records and opined that Plaintiff could perform medium work with no limitations on handling or fingering. R. 92–96.

On December 18, 2020, Plaintiff saw Jebb for pain in his hands, arms, and wrists. R. 399–401. Jebb noted that Plaintiff had been "concerned with bilateral wrist and hand pain for around a year" and thought he had arthritis "from many years of working physically demanding jobs." R. 399. Jebb noted 5/5 strength in both hands with mild tenderness to palpation of all MCP joints. R. 399. Jebb prescribed Meloxicam and referred Plaintiff for X-rays. R. 400.

On January 13, 2021, an X-ray of Plaintiff's left hand showed "mild arthritic changes with thumb interphalangeal joint space narrowing as well as narrowing in the [distal interphalangeal (DIP)] joints." R. 417. An X-ray of Plaintiff's right hand showed "[m]ild arthritic changes of the thumb interphalangeal and proximal DIP join with tiny osteophytes." R. 420.

On July 6, 2021, one week before the hearing, Plaintiff went to the emergency room reporting that he had been assaulted with a hammer. R. 455. While he suffered numerous injuries, with regard to his left hand, the physical exam revealed a 4-centimeter laceration on his thumb and a 4.5-centimenter laceration on his left middle finger, with tendon and bone exposed. R. 456. X-rays of Plaintiff's left hand showed that Plaintiff had an open displaced fracture in his left middle finger and a closed nondisplaced fracture in his left index finger. R. 466–68. Plaintiff's lacerations were sutured and his broken fingers were placed in a splint. R. 523. The pharmacy at the ER filled a prescription for Keflex (an antibiotic) and sent a prescription for pain medication to another pharmacy. R. 466.

On July 7, 2021, Plaintiff returned to the emergency room for a wound check, stating that he was unable to pick up his medications at the pharmacy because his wallet had been stolen. R. 449. That same day, Plaintiff saw Edric G. Schwartz, M.D., for follow-up care for his left-hand injuries. R. 526. Plaintiff reported a pain level of 8/10 at rest and 10/10 with activity. R. 526. Dr. Schwartz reviewed the X-rays from the emergency room and diagnosed Plaintiff with a closed displaced fracture of the proximal phalanx of the left middle finger and a closed displaced fracture of the middle phalanx of his left index finger. R. 526–27. Dr. Schwartz noted that "based on the alignment I would recommend surgical intervention" and that nonsurgical closed treatment increased "the risks of malalignment, perman[e]nt deformity, loss of function, loss of range of motion, post-traumatic arthritis, and other issue[s] related to closed treatment." R. 527. However, Plaintiff chose conservative treatment with immobilization in his current splint. R. 527. Plaintiff saw Dr. Schwartz again on July 12, 2021. R. 523. Plaintiff reported a pain level of 0/10 at rest and 6/10 with activity. R. 523. X-rays showed the fracture in unchanged alignment. R. 523–24. Dr. Schwartz again recommended surgery, and Plaintiff again chose to continue with immobilization

5

in his splint "despite the displacement." R. 524. Plaintiff saw Dr. Schwartz a third time on July 19, 2021. R. 520. Plaintiff reported that he was taking no pain medications and his pain level was 9/10 at rest and 9/10 with activity. R. 520. Dr. Schwartz noted that Plaintiff was "doing slightly better" in comparison to the last visit and "doing well," noting that X-rays taken that day demonstrated that "the fracture [wa]s in unchanged alignment when compared to previous films." R. 520.[4] Dr. Schwartz described the fracture as "healing in acceptable alignment" and continued with immobilization of the fracture in a splint. R. 521. Dr. Schwartz noted that he would "continue close observation to make sure displacement does not occur" and intended to recheck Plaintiff's hand one week later. R. 521. The notes from this appointment are the most recent evidence in the medical record.

The ALJ reviewed Plaintiff's left finger fractures as part of her step-two analysis. She noted that Plaintiff suffered an open displaced fracture of the proximal phalanx of the middle finger, laceration of the left thumb, and a closed nondisplaced fracture of the distal phalanx of the left index finger. R. 20. The ALJ then stated:

> At a follow up the following day, he described dull pain that was worse with movement, and he denied taking any medications for pain (13F/7). It was noted on July 12, 2021, that the claimant was "doing well" and pain was improved (14F/6). Surgical repair of the left finger fracture was recommended, but the claimant wished to pursue nonoperative treatment; thus, a splint was placed to immobilize the fracture (14F/6). As of July 19, 2021, the left finger fracture was healing in acceptable alignment and the claimant was reportedly doing well. (14F/3). The undersigned finds that these injuries sustained as a result of the July 6, 2021 assault are not likely to last 12 months duration; thus they are non-severe.

R. 20–21.

---

[4] The record does not contain a more detailed description of these X-rays.

6

Plaintiff argues that the ALJ erred by "explicitly playing doctor when attempting to predict the long-term outcome of Plaintiff's assault injuries." Pl.'s Br. at 9, Dkt. 14. Plaintiff argues that the ALJ should have obtained an updated medical opinion before concluding that "Plaintiff would remain capable of using his hands the majority of the workday with no further limitation." *Id.* Plaintiff notes that "the Seventh Circuit has stated repeatedly that an ALJ may not 'play[] doctor and interpret new and potentially decisive medical evidence without medical scrutiny.'" *Id.* at 10 (quoting *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018)). Plaintiff argues "that the additional records in this case were significant enough to require the aid of a medical expert opinion." *Id.*

Plaintiff principally relies on *Kemplen v. Saul*, 844 F. App'x 883, 887 (7th Cir. 2021) (unpublished), which he asserts is particularly analogous to this case. In *Kemplen*, the plaintiff had been to the emergency room with complaints of pain in her left hand. X-rays revealed soft-tissue swelling in her hand and a fractured left pinky finger. The plaintiff argued that these X-rays should have been provided to an expert for review before the ALJ determined that she could tolerate frequent handling. In analyzing this issue, the Seventh Circuit explained,

> The issue, then, comes down to whether the new information "changed the picture so much that the ALJ erred by continuing to rely on an outdated assessment by a non-examining physician and by evaluating himself the significance of [the subsequent] report," *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016), or whether the updated information was minor enough that the ALJ did not need to seek a second opinion.

*Id.* The Seventh Circuit concluded that "the ALJ erred by not soliciting an updated medical opinion interpreting" two sets of X-rays showing that the plaintiff "was experiencing osteoarthritic changes in her elbow and her left hand, along with soft-tissue swelling in her hand and a fractured left pinky finger," which "could conceivably affect her ability to reach, handle, and finger on a continuous

7

basis." *Id.* Relying on *Kemplen,* Plaintiff argues that the X-rays and treatment records regarding Plaintiff's left finger fractures required expert review.

In response, the Commissioner argues that "the evidence of [P]laintiff's July 2021[] assault did not change the picture so much that medical expert review was required," because "the evidence showed that [P]laintiff experienced acute injuries, but a week later was doing well and his pain improved; about two weeks later, his left finger fracture was healing in acceptable alignment, and it was again noted that he was doing well." Def.'s Br. at 5, Dkt. 19. The Commissioner cites *Durham v. Kijakazi* for the proposition that "an ALJ may rely on prior administrative medical findings as well as later-submitted treatment records in assessing a residual functional capacity as long as she does not 'interpret[] results of "highly complex" medical tests on [her] own.'" *Id.* (quoting *Durham v. Kijakazi* 53 F.4th 1089, 1095 (7th Cir. 2022)). The Commissioner asserts that here, as in *Durham*, none of the later-submitted evidence "suggest[ed] a material change in [the plaintiff's] situation." *Id.* (quoting *Durham*, 53 F.4th at 1095).

Plaintiff has the better of this argument. The ALJ *did* interpret the results of Plaintiff's X-rays on her own; the ALJ found that because Plaintiff's X-rays showed that his fracture was "healing in acceptable alignment," Plaintiff's injuries "[we]re not likely to last 12 months duration; thus, they [we]re non-severe." R. 20–21. The ALJ then declined to mention Plaintiff's injuries from the assault in her RFC assessment,[5] evidently concluding that "acceptable alignment" meant that Plaintiff's fractures would not just heal but heal so well that they would have no impact on his ability to frequently handle and finger with his left hand. The ALJ was not qualified to reach this

---

[5] As such, even if the ALJ was correct that Plaintiff's injuries were non-severe, she nevertheless erred by failing to mention them at all in her RFC assessment. *See* SSR 96-8p, 1996 WL 374184, at *5 ("In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). This failure to comply with the narrative discussion requirement of SSR 96-8p "in itself is sufficient to warrant reversal of the ALJ's decision." *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

conclusion and, unlike in *Durham*, her conclusion was unsupported by a recent medical opinion. *See Durham*, 53 F.4th at 1095 (noting that "[t]he most recent evaluation performed by a cardiologist revealed that [the plaintiff] had "mild systemic disease, no acute problems, and no functional limitations."). Thus, the Court agrees with Plaintiff that *Kemplen* is more closely analogous to this case than *Durham*, and as in *Kemplen*, remand is appropriate.

First, the ALJ may well have read too much into Dr. Schwartz's remark that Plaintiff's fractures were healing in acceptable alignment. Dr. Schwartz reviewed X-rays on July 6, 2021, and "based on the alignment" he recommended surgical repair of the finger fracture. Alignment was unchanged on x-rays taken on July 12, 2021, and Dr. Schwartz continued to recommend surgery. X-rays taken on July 19, 2021, confirmed that the alignment was unchanged. R. 520, 526–27. As such, while their alignment may have been "acceptable" in some sense (perhaps because the plaintiff had refused surgical intervention), the fractures were unchanged during all three visits with Dr. Schwartz. There does not appear to be any change that would alter Dr. Schwartz's concern that nonsurgical closed treatment posed several risks, including loss of function. R. 527. The ALJ improperly played doctor by taking these particular imaging results out of context and re-interpreting them on her own. *See Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018) (ALJ improperly played doctor by concluding, without expert opinion, that X-rays showing "good fusion and good position of the [sacroiliac] joint" were inconsistent with complaints of disabling pain).

Second, Dr. Schwartz ordered Plaintiff to return just one week after Plaintiff's most recent appointment to ensure that further displacement of the fracture would not occur. R. 521. If the doctor who actually interpreted Plaintiff's X-rays did not believe that Plaintiff's fractures would *continue* healing in acceptable alignment, then the Court cannot discern how the ALJ concluded

9

that Plaintiff's fractures would heal completely in less than a year, other than by improperly substituting her own judgment for that of Dr. Schwartz. Thus, the Court cannot conclude that substantial evidence supports the ALJ's decision. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 540 (7th Cir. 2003). Because the record is silent on the question of duration and the ALJ's finding rests solely on this independent medical determination, the ALJ's conclusion that Plaintiff's injuries fail to satisfy the duration requirement is unsupported by substantial evidence, and the case must be remanded. *Williams v. Bowen*, 689 F. Supp. 825, 830 (N.D. Ill. 1988).

On remand, the ALJ must obtain an updated medical opinion regarding Plaintiff's functional limitations, including any limitations due to his hand arthritis and the fractures to the fingers of his left hand as a result of the assault. The ALJ must also reassess Plaintiff's RFC, providing a good explanation, supported by substantial evidence, for her conclusions.

### IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is granted, and the Commissioner's motion is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this opinion.

Date: June 12, 2023  By: _____
Lisa A. Jensen
United States Magistrate Judge